USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/18/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

HOLOTOUCH, INC.,

                Plaintiff,

-against-

MICROSOFT CORPORATION,

                Defendant.

------------------------------------------------------------ X

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

17 Civ. 8717 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

      This case concerns a patent dispute involving an augmented reality device, known as the "HoloLens," currently being developed by Microsoft Corporation ("Microsoft"). The device is a wearable computer built into a pair of smartglasses that allows a user to interact with holographic images, such as a computer keyboard, without touching a physical object. Plaintiff Holotouch, Inc. ("Holotouch") filed this case on November 9, 2017, alleging that Microsoft's HoloLens product infringes on two of its patents: U.S. Patent No. 6,377,238 B1 ("the '238 patent") and U.S. Patent No. 7,054,045 B2 ("the '045 patent"). Broadly speaking, the patents relate to the control of an input device by interacting with a holographic image of a physical device, rather than the physical device itself. Microsoft now moves to dismiss the complaint under Federal Rule 12(b)(6), arguing that the '238 patent expired in 2013, well before this case arose, and that the allegations in the complaint are otherwise conclusory and fail to state a claim upon which relief may be granted. For the reasons discussed herein, the motion to dismiss is granted in part and denied in part. Count I of the complaint is dismissed; Count II remains viable.

**Background**

The following facts are taken largely from plaintiff's complaint, which I must "accept[] as true" for the purpose of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A.  **HoloLens Product**

Microsoft's HoloLens is a wearable augmented reality device built into a pair of smartglasses. The device functions as a head-mounted computer system that projects holograms onto a user's field of vision, allowing the user to see, hear, and interact with holograms as if they were a physical object. A marketing image of the HoloLens is produced below:



*See* Complaint, ECF 1, Fig. 3.

The HoloLens is designed, at least in part, to replace traditional physical computers by allowing users to interact with a holographic image, rather than a physical computer, that is projected through high-definition semitransparent holographic lenses. *Id*. at ¶¶ 8, 24–26. To facilitate this, the headset contains numerous cameras measuring ambient light, the user's environment, and the user's physical movements. *Id*. at ¶ 27–28. For example, the HoloLens' cameras and sensors can be used to project a holographic keyboard onto a user's field of vision, translate the user's hand gestures into typing movements, and allow the user to "type" onto the holographic keyboard, as shown below:

2



*Id.*, Fig. 2; *see also id.* at ¶ 34 ("HoloLens provides a holographic keyboard interface that allows application developers to build a touchscreen keyboard . . . into HoloLens-supported applications and, therefore, allows users the ability to interact with the holographic keyboard when using one or more HoloLens software applications."). The HoloLens can also be used to interact with other user interfaces, as shown below:



*Id.*, Fig. 1. In short, the HoloLens aims to function as a self-contained, wearable holographic computer system.

### B. Holotouch's Patents

Holotouch is an engineering firm that "works with original equipment manufacturers to design and build prototypes of devices using HoloTouch's patented

3

technologies." *Id.* at ¶¶ 20–22. Holotouch claims that Microsoft's HoloLens product infringes on two of its patents that address augmented reality technology: the '238 patent and the '045 patent. Broadly stated, the '238 patent, issued on April 23, 2002, covers the following:

> Operator input into one or more devices to be controlled by the operator is provided through a holographic image of the keys or other input devices customarily actuated to provide input data to the system wherein actuation of the holographic image of the input devices is detected optically without tangible physical contact by the operator with a solid control object or control surface.

Complaint, ECF 1, Ex. 1, at 1; *see also* Complaint, ECF 1, at ¶¶ 6–9.

The '045 patent, issued on May 30 2006, was intended to improve certain aspects of augmented reality technology including the power consumption, size, and weight of conventional devices. *Id.* at ¶¶ 12–13. According to its abstract, the '045 patent covers the following:

> A holographic HMI allows data and commands to be entered into electronic equipment. The HMI involves no tangible physical contact between the human operator and the control elements because the input devices are holographic images of keys or other customarily touch-activated tangible input elements. Operator interaction is detected through electromagnetic means, obviating the need for direct physical contact with any solid input object or surface. Such HMIs generate a holographic image of a tangible input object of the tangible control mechanism. An illumination device illuminates the hologram to produce the holographic image. An actuation detection device detects the selection by the operator of a holographic image, and a signal generator receives the detection of the actuation detection device and provides an input signal to the electronic or electro-mechanical device thereby to produce the response. The hologram is affixed to a transparent or translucent material.

Complaint, ECF 1, Ex. 2.

4

The complaint alleges that in 2013, Microsoft filed a patent application that cited Holotouch's patents as prior art. Complaint, ECF 1, at ¶ 40. Holotouch then contacted Microsoft in November 2015, and again in January 2016, to attempt to negotiate a license. *Id.* at ¶ 41. When Microsoft expressed no interest in doing so, this lawsuit followed. *Id.*

**Discussion**

In ruling on a motion to dismiss, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001), *as amended* (Apr. 20, 2001). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A suggestion has been made that a more permissive version of the *Twombly/Iqbal* standard applies in patent cases in this district. As an initial matter, "Form 18, provided in an appendix to Rule 84 of the Federal Rules of Civil Procedure, formerly governed the pleading standards for claims of patent infringement." *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, No. 16-CV-885 (JPO), 2017 WL 74729, at *3 n.4 (S.D.N.Y. Jan. 4, 2017). But following amendments to the Federal Rules in 2015 that abrogated Form 18, "the plausibility pleading requirement of *Twombly* and *Iqbal* became the operative standard for pleading patent infringement." *Id.*; *L.M. Sessler Excavating & Wrecking, Inc. v. Bette & Cring, LLC*, No. 16-CV-06534-FPG, 2017 WL 4652709, at *4 (W.D.N.Y. Oct. 17, 2017) ("A number of courts to

address the post-abrogation standard have reasoned that the higher bar of *Twombly* and *Iqbal* is the proper one.").

Acknowledging this, Holotouch argues that the Southern District's Local Patent Rules, which require plaintiffs to disclose their asserted claims and infringement conditions early in the case, somehow modify the applicable pleading standard. *See In Re: Local Patent Rules of the Southern and Eastern Districts of New York*, 13 Misc. 119 (Apr. 5, 2013). Although I acknowledge that a minority of out-of-district cases have followed such an approach,[1] I decline to do so. The Local Patent Rules for the Southern and Eastern Districts are intended to streamline and standardize the administration of patent cases. But such rules cannot, as Holotouch contends, abrogate Federal Rules of Civil Procedure or cases of the Supreme Court. *See Orientview Techs. LLC v. Seven For All Mankind, LLC*, No. 13 CIV. 0538 PAE, 2013 WL 4016302, at *6 (S.D.N.Y. Aug. 7, 2013) (holding that "the Local Patent Rules and the heightened pleading standard are not inconsistent," and declining to "measure[]" patent cases "under a different standard than almost all other claims in this Circuit"); *Hon Hai Precision Indus. Co. v. Wi-LAN, Inc.*, No. 12 CIV. 7900 SAS, 2013 WL 2322675, at *8 (S.D.N.Y. May 28, 2013) (holding that "the bodies that implemented the relevant patent rules do not have the authority to (impliedly) repeal either the Federal Rules of Civil Procedure, or Supreme Court decisions; and because the fact that invalidity contentions must be served, *e.g.*, forty-five days after the first status conference has no bearing on the initial sufficiency of a pleading"). The familiar pleading standard outlined in *Twombly* and *Iqbal* applies to this case.

---

[1] *See Gracenote, Inc. v. Sorenson Media, Inc.*, No. 2:16-CV-950 CW, 2017 WL 2116173, at *3 (D. Utah May 15, 2017) ("The Local Patent Rules, in fact, anticipate robust disclosure of 'the particulars behind allegations of infringement . . . at an early date.'" (quoting local rules)); *Niazi v. Pressure Prod. Med. Supplies, Inc.*, No. 16-CV-670-JDP, 2017 WL 108114, at *3 (W.D. Wis. Jan. 11, 2017) ("This court's preliminary pretrial conference order will require [plaintiff] to disclose soon precisely what [defendant] is looking for, without the need for motion practice over the form of the complaint.").

6

## A. The '238 Patent

Microsoft first claims that, based on 35 U.S.C. § 154(a)(2), the '238 patent was subject to a 20-year term limit that expired years before this case arose. Under the terms of the Patent Act, its implementing regulations, and the face of the patent itself, I find that the '238 patent expired on April 28, 2013. Because the complaint does not allege that Microsoft infringed on its patent before it expired, Count I of the complaint must be dismissed.

### 1. Patent History

Although the '238 patent was issued on April 23, 2002, its history traces back much further. The '238 patent application was first filed with the Patent Office on June 6, 1995, claiming priority to an application originally filed on April 28, 1993. The June 6, 1995 patent application was denied by the Patent Office Examiner, *see* Declaration of Sarah E. Jelsema, ECF 21, Ex. C, and the Board of Patent Appeals and Interferences upheld the Examiner's denial on November 14, 2000, *see* Declaration of Sarah E. Jelsema, ECF 21, Ex. E.

After the patent was denied, Holotouch supplemented its submission by filing a Continued Prosecution Application ("CPA") on January 16, 2001, pursuant to 37 C.F.R. 1.53(d).[2] *See* Declaration of Sarah E. Jelsema, ECF 21, Ex. F. Crucially, Patent Office regulations provide that by filing a CPA, Holotouch *abandoned* its 1995 application. *See* 37 C.F.R. § 1.53(d)(2)(v). The Patent Office ultimately granted the CPA, and the '238 patent was issued on April 23, 2002. *See* Complaint, ECF 1, Ex. 1.

---

[2] A Continued Process Application, referred to herein as a CPA, was created by the Patent Office in 1997 during an amendment of 37 C.F.R. § 1.53(d). *See* Changes to Patent Practice and Procedure, 62 Fed. Reg. 53,132-01, 53,141 (Oct. 10, 1997). Unlike filing a new patent application or a continuation-in-part application under § 1.53(b), a CPA is treated as "a request to expressly abandon the prior application as of the filing date of the request." 37 C.F.R. § 1.53(d)(2)(v).

7

2. The '238 Patent Expired in 2013

Patent duration is governed by statute. Under 35 U.S.C. § 154(a)(2), the grant of a patent

> shall be for a term beginning on the date on which the patent issues and ending 20 years from the date on which the application for the patent was filed in the United States or, if the application contains a specific reference to an earlier filed application or applications under section 120, 121, 365(c), or 386(c) from the date on which the earliest such application was filed.

On its face, § 154(a)(2) provides a 20-year term that runs *"from the date on which the earliest such application was filed."* 35 U.S.C. § 154(a)(2) (emphasis added). Because the first application in this patent's history was filed on April 28, 1993, a plain reading of § 154(a)(2) suggests that the '238 patent expired on April 28, 2013, and that Count I of the complaint must be dismissed.

To avoid this result, Holotouch argues that the duration of the '238 patent is governed not by § 154(a)(2), which was created when the patent laws were amended in 1995 as part of the Uruguay Round Agreements Act ("URAA"), but by § 154(c)(1)'s safe-harbor provision. § 154(c)(1) provides that

> [t]he term of a patent that is in force on or that results from an application filed before [June 8, 1995] shall be the greater of the 20-year term as provided in subsection (a), or 17 years from grant, subject to any terminal disclaimers.

35 U.S.C. § 154(c)(1); *see also Merck & Co. v. Kessler*, 80 F.3d 1543, 1547 (Fed. Cir. 1996). As the Federal Circuit has explained:

> The purpose of the URAA was not to extend patent terms, although it has that effect in some cases, but to harmonize the term provision of United States patent law with that of our leading

8

> trading partners which grant a patent term of 20 years from the
> date of filing of the patent application. Prior to June 8, 1995, U.S.
> patents had an expiration date under 35 U.S.C. § 154 measured as
> 17 years from the date the patent issued, except where terminal
> disclaimers were filed.

*Merck*, 80 F.3d at 1547. Put differently, the URAA changed patent terms "from seventeen years from the date of issuance to twenty years from the date of filing of the patent application." *Bayer AG v. Carlsbad Tech., Inc.*, 298 F.3d 1377, 1378 (Fed. Cir. 2002). To avoid upsetting settled expectations, however, Congress enacted § 154(c)(1), which allowed patent applications filed by June 8, 1995 to claim a term of "the greater of the 20-year term as provided in subsection (a), or 17 years from grant." 35 U.S.C. § 154(c)(1); *Merck*, 80 F.3d at 1548 ("Patents in the section 154(c)(1) category thus are entitled to keep or to enjoy the 17–year term from issuance of the patent or a 20–year from filing term, whichever is longer.").

Attempting to take advantage of § 154(c)(1), Holotouch filed a continuation application on June 6, 1995, two days before the deadline. *See* Complaint, ECF 1, Ex. 1. Accordingly, Holotouch claims that the '238 patent expires on April 23, 2019, 17 years after the date of issuance on April 23, 2002, rather than the 20-year period from the date the first application was filed, as § 154(a)(2) would otherwise provide.

However, Holotouch cannot rely on § 154(c)(1)'s safe harbor because by filing the 2001 CPA, Holotouch abandoned its June 6, 1995 application. *See* 37 C.F.R. 1.53(d)(2)(v) ("An application under filed under this paragraph . . . [i]s a request to *expressly abandon* the prior application as of the filing date of the request for an application under this paragraph."). In so doing, Holotouch forfeited the benefit of § 154(c)(1) and is instead subject to the 20-year term in § 154(a)(2). This interpretation is confirmed by the statutory language, various regulatory provisions, and the face of the '238 patent itself.

First, § 154(c)(1) expressly provides that an applicant may take advantage of the longer term only if the patent *"results from* an application filed before" June 8, 1995. 35 U.S.C. § 154(c)(1) (emphasis added). Because the relevant regulations provide that the filing of a CPA amounts to abandoning the prior application, *see* 37 C.F.R. 1.53(d)(2)(v), the later patent can hardly be said to have *resulted from* the abandoned application, *see* 35 U.S.C. § 154(c)(1). This is especially true where, as here, the June 6, 1995 patent was denied by the Patent Office.

This construction is also consistent with the Patent's Office's contemporaneous interpretation. After the CPA process was created in 1997, the Patent Office published a regulation recognizing that "[p]ermitting the continued prosecution application practice to be applicable in instances in which the prior application was filed prior to June 8, 1995, would result in confusion as to whether the patent issuing from the continued prosecution application is entitled to the provisions of 35 U.S.C. 154(c)." Changes to Continued Prosecution Application Practice, 63 Fed. Reg. 5732-01, 5733 (Feb. 4, 1998). To avoid this, the Patent Office harmonized §§ 154(a)(2) and 154(c)(1), explaining that because "the continued prosecution application practice was not in effect prior to June 8, 1995, no patent issuing from a continued prosecution application is entitled to the provisions of 35 U.S.C. 154(c)." *Id.*; *see also Ex Parte Klaus Wellerdieck, Urs Wegmann, & Karl Hoefler*, No. 2007-1119, 2007 WL 1314867 (B.P.A.I. May 4, 2007).

Finally, any ambiguity concerning the patent's term is conclusively resolved by the face of the patent, which contains a notice stating: "This patent issued on a continued prosecution application filed under 37 CFR 1.53(d), and is subject to the twenty year patent term provisions of 35 U.S.C. 154(a)(2)." *See* Complaint, ECF 1, Ex. 1. This undoubtedly put

10

Holotouch on notice that the '238 patent would be subject to § 154(a)(2), rather than § 154(c)(1), and would expire 20 years from the original filing date of April 28, 1993.

The pleadings alone demonstrate that the '238 patent is expired. But were the Court to convert the motion into one for summary judgment under Rule 56 and consider materials outside the pleadings, *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985), Patent Office records also demonstrate that Holotouch was given notice before filing a CPA that doing so would subject it to the shorter term contained in § 154(a)(2). When Holotouch filed its CPA on January 11, 2001, the form included a specific notice explaining that "a patent issued on a CPA . . . is subject to the twenty year patent term provisions of 35 U.S.C. § 154(a)(2)," even if "the prior application of a CPA may have been filed before, on or after June 8, 1995." Declaration of Sarah E. Jelsema, ECF 21, Ex. F. The notice further provided that, consistent with the applicable regulations, "[t]he filing of this CPA is a request to expressly abandon the prior application as of the filing date for a CPA." *Id.* Upon receipt of this notice, Holotouch responded in writing and requested "continuation of prosecution of the subject application, which is a Continued Prosecution Application (CPA) of prior U.S. Application No. 08/469,770 filed June 6, 1995." Declaration of Sarah E. Jelsema, ECF 29, Ex. H. There can be no dispute that Holotouch was on notice that it was subject to the 20-year patent term set out in § 154(a)(2).[3]

---

[3] Holotouch also suggests that the payment of maintenance fees after the expiration date extends the term of the '238 patent. But the payment of maintenance fees after a patent expires says nothing about the term of a patent under 35 U.S.C. § 154(a)(2), and a patent holder surely cannot extent a patent's term simply by paying fees after its expiration. Indeed, the Patent Office notifies patent holders on its website that "utility patents expire after 20 years from the application filing date subject to the payment of appropriate maintenance fees" and that the Patent Office "does not calculate the expiration dates for patents." *See* Declaration of Sarah E. Jelsema, ECF 29, Ex. J, at 8.

The '238 patent expired on April 28, 2013. Because the HoloLens was announced in 2016, and the complaint contains no factual allegations that Microsoft infringed on the '238 patent prior to 2013, Count I of the complaint is dismissed for failure to state a claim.

## B. Failure to State a Claim for Direct Infringement

Microsoft separately moves to dismiss the complaint under rule 12(b)(6), arguing that the claims related to the '045 patent are conclusory. Because I find that the complaint is sufficient to state a claim, the motion to dismiss Count II is denied.

Holotouch claims that Microsoft's HoloLens directly infringes on various claims in the '045 patent.[4] Direct infringement claims are governed by 35 U.S.C. § 271(a), which provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." "In order to prove direct infringement, the plaintiff must establish that a party performed every element of a claimed invention." *Crypto Research, LLC v. Assa Abloy, Inc.*, 236 F. Supp. 3d 671, 685 (E.D.N.Y. 2017); *see also Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1319 (Fed. Cir. 2015) ("To establish literal infringement, every limitation set forth in a claim must be found in an accused product . . . ." (internal quotation marks omitted) (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995))); *Endo Pharm. Inc. v. Amneal Pharm., LLC*, No. 12 CIV. 8060 (TPG), 2015 WL 9459823, at *26 (S.D.N.Y. Aug. 18, 2015) ("Direct infringement exists if the defendants' product or methods . . . meet each and every element of the claims.").

---

[4] Because the '238 patent expired in 2013 and Count I is dismissed, the Court considers the sufficiency of the allegations only as to Count II, which relate to the '045 patent. The '045 patent was granted by the Patent Office on May 30, 2006, and there is no dispute that it was in effect at the time of the alleged infringement.

12

Microsoft does not suggest that the complaint fails to allege infringement of every element of the claims. Instead, Microsoft argues that the complaint is deficient because it does so in a conclusory manner, parroting the language of the patent itself with a perfunctory attribution to Microsoft. For instance, Microsoft cites paragraph 81 of the complaint, which reads as follows:

> <u>Microsoft's HoloLens is</u> an apparatus which allows an operator to control an electronic or electro-mechanical device <u>(i.e., a PC or other type of computing device)</u> of the type conventionally controlled by a tangible control mechanism <u>(i.e., a keyboard)</u> having one or more customarily touch-activated tangible input objects, physical contact with which produces a response by the electronic or electro-mechanical device.

Complaint, ECF 1, at ¶ 81 (emphasis added). The majority of this paragraph is taken directly from the '045 patent; the underlined portions were added to attribute the infringement to Microsoft and to provide examples clarifying the patent's technical language. According to Microsoft, Holotouch repeats this formula throughout Count II, describing each element of the patent claim in terms of the patent's text.

Were these the only allegations in the complaint, Microsoft might be correct that Holotouch failed to state a claim. But the complaint contains far more. As detailed above, paragraphs 6 through 19 of the complaint identify and explain Holotouch's patents, with reference to the text of each, and paragraphs 24 through 38 describe Microsoft's HoloLens product in great detail. Taken with the claims set out in Count II, the detailed description of the allegedly infringing product sufficiently identifies the factual connection between the HoloLens product and claims protected by the patent. As the Supreme Court has explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

13

678. This is preciously what plaintiff has done here. Nothing more is required to place Microsoft on notice of the claims against it.

To avoid this result, Microsoft relies heavily on a number of out-of-district cases for the proposition that "[c]ourts facing similar parroting of claim language as allegations of infringement have found it to be insufficient under the more exacting standards of *Iqbal* and *Twombly*." Memorandum in Support of Motion to Dismiss, ECF 20, at 7; *see also e.g.*, *N. Star Innovations, Inc. v. Micron Tech., Inc.*, No. CV 17-506-LPS-CJB, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017); *L.M. Sessler Excavating & Wrecking, Inc.*, 2017 WL 4652709, at *4; *Macronix Int'l Co. v. Spansion Inc.*, 4 F. Supp. 3d 797, 804 (E.D. Va. 2014). These cases do not compel a different conclusion.

For instance, Microsoft cites cases such as *L.M. Sessler Excavating & Wrecking, Inc. v. Bette & Cring, LLC*, 2017 WL 4652709. The plaintiff in *L.M. Sessler* held a patent "detail[ing] a process for bridge demolition." *Id.* At *1. On the defendant's motion, the court held that "[a]lthough Plaintiff specifies the relevant [New York State Thruway Department of Transportation] contract and alleges that Defendant performed each step of the patent claim at issue, it does so using exactly—and entirely—its own patent language." *Id.* at *4. The court dismissed the complaint, concluding that "[t]o the extent Plaintiff addresses every element, it is only by parroting the patent claim and prefacing it with an introductory attribution to Defendant." *Id.* at *4. Microsoft also cites *North Star Innovations*, a case involving a flash memory patent, in which the court explained that the complaint "does little more than parrot back the language of these claim elements and then states that the accused product is comprised of such elements." *N. Star Innovations, Inc. v. Micron Tech., Inc.*, 2017 WL 5501489, at *2. In dismissing the complaint, the court held that "a patentee cannot meet its obligation to assert a

14

plausible claim of infringement under the *Twombly/Iqbal* standard by merely copying the language of a claim element, and then baldly stating (without more) that an accused product has such an element." *Id*.

As an initial matter, the cases on which Microsoft relies are easily distinguishable. The complaint at issue in *L.M. Sessler*, which totaled only six pages, did *nothing more* than specify the relevant government contract and quote the patent. *See* Amended Complaint, *L.M. Sessler Excavating & Wrecking, Inc.*, No. 16-CV-06534-FPG, 2017 WL 4652709 (W.D.N.Y. Oct. 17, 2017), dkt. 16. The complaint in *North Star Innovations* similarly contained no factual description of the infringing product. *See* Amended Complaint, *N. Star Innovations, Inc.*, 2017 WL 5501489 (D. Del. Nov. 16, 2017), dkt. 16. Unlike the complaint here, which describes the allegedly infringing product in great detail, the complaints in *L.M. Sessler* and *North Star Innovations* contained no factual allegations sufficient to raise the complaint about a speculative level.

These cases do not, as Microsoft contends, create an "anti-parroting" principle, and there is nothing inherently problematic about quoting the language of an allegedly infringed patent. And more fundamentally, in reviewing the sufficiency of the pleadings under Rule 12(b)(6), I must review the complaint on its own terms. This is an individualized inquiry that is principally concerned with giving a defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). Comparisons to other cases does not help. The central question is whether the complaint, assumed as true and taken with all reasonable inferences, raises a plausible claim for relief. I hold that it does.

15

## Conclusion

For the reasons stated herein, the motion to dismiss is granted in part and denied in part. Count I of the complaint is dismissed for failure to state a claim; Count II remains viable. The clerk is instructed to terminate the motion (ECF 19). The parties shall appear for a status conference on June 1, 2018 at 10:00 a.m.

SO ORDERED.

Dated: May 18, 2018
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge